We move to the final case this morning, Matushkina v. Davies. He used to mark it on here, but it's not on here. It doesn't say on here. It says it on the other thing. It's okay. Oh, yeah, it was sitting in Austin. Good morning, Your Honors. May it please the Court, my name is Kevin Raka. I represent the plaintiff's appellants Elena Matushkina and Svetlana Son. This is an appeal of the District Court's dismissal of an APA action filed by the plaintiffs claiming that the Customs and Border Protection Agency had made a decision regarding her inadmissibility to the United States, which was arbitrary, capricious, and abuse of discretion or otherwise in violation of law. The government challenged standing to sue before the District Court, and Judge Norville dismissed this, finding that there was not subject matter jurisdiction. We believe that decision was an error. We believe that the plaintiffs did have standing. How does the daughter have standing? Your Honor, our argument regarding the daughter's standing is that her right to be reunited with her mother, to have their family join together, to manage their family relations as they wished here in the United States, was violated by the inadmissibility finding. And how does that stand up in the face of Kerry v. Dinn? Your Honor, our first argument is that we don't believe that the doctrine of consular nonreviewability should apply in this instance to the CBP determination. That's a separate question. Certainly. I'm talking about standing. I believe that Ms. Matushkina's standing argument is stronger, Your Honor. It is. I think in light of Kerry v. Dinn that Ms. Son's argument regarding standing is tenuous.  Her injury perhaps does not stand up to scrutiny in light of Kerry v. Dinn. In human terms it's obvious, but in legal terms it's not. I believe that's correct, Your Honor. We assert that Ms. Matushkina still had standing. Just to return to the argument regarding consular nonreviewability, we did not locate a case which had applied consular nonreviewability specifically to decisions made by CBP where DOS had already issued a visa and CBP then made an inadmissibility finding. We do not believe that the doctrine should extend to those CBP decisions. We believe that the APA provides grounds to properly challenge those decisions, which are not purely discretionary in nature. The reason we believe that the agency's decision violated the APA is that the agency found that Ms. Matushkina made a material misrepresentation based on a misunderstanding of the information requested by the U.S. consulate at the time she applied for the visa. Ms. Matushkina filed a DS-156, which is an online application for her nonimmigrant visa. One of the questions on that form, this is that supplemental appendix 14 and 15, asked for the applicant to list family members in the United States and to indicate a brief summary of their family member status in the United States, simply if they're a citizen or resident or student, a sort of basic understanding of what legal status they have in the United States. The CBP officer who interviewed Ms. Matushkina at O'Hare determined that she had not disclosed that her daughters were working in the United States and that that working would be in violation of their student status. Now when Ms. Matushkina filled out the DS-156, she followed the instructions. She listed that her daughters were present here and that they were students. The form does not ask for a person to make a legal determination as to whether that status is proper or whether their relative is doing anything to violate their status, but that is what the CBP officer found was a material misrepresentation, that she had not indicated that they were working and that that would violate their status. Could they have been working and going to school? I believe so, Your Honor. The facts that were developed were limited. It was just at the initial complaint phase and then a motion to dismiss. But it's not clear if... Our argument is that it's not relevant whether or not they were both working and going to school. And even if they were, it's possible that they could have received employment authorization to do so from the Immigration Service. That wasn't asked by the customs official. He determined that a material misrepresentation was made simply because she didn't disclose that her daughters were working and that he considered that a violation of their status. But that is not on the form, nor was it indicated that the officer who interviewed her at the consulate when she applied for her visa asked any further questions regarding her daughters except for what she had indicated and what was asked for on the form. What agency action is there here to challenge other than the denial of the visa? So, Your Honors, what the agency did is they allowed Ms. Matushkina to withdraw her application for admission. They canceled her visa. Should they have not? It was that decision itself, whether to allow her to withdraw or whether to issue an order, an expedited order, was within the agency's discretion. We don't question whether or not they properly allowed withdrawal. We are challenging, rather, the agency action, which was the entry of a formal inadmissibility finding into the lookout system. How is that an action? It's an action for two different reasons, Your Honor. As Bennett set forth, this was a final step taken by the agency. After they allowed her to withdraw her application for admission, they served her with the form I-275, and then they entered a separate entry into a DHS database lookout system, which other agencies can then access, which indicated that she had made a material misrepresentation. That was a final determination by Customs and Border Protection that she had made a material misrepresentation and would be further inadmissible to the United States as a result. How is that different from the information that led to the exclusion of Mr. Knauf's wife from Germany, back in the Knauf case, or the information that led to the exclusion of Ms. Dinh's husband? Certainly, Your Honor. I think there's a distinction in Dinh in that it was an action taken by the consulate in denying the visa itself, so it wasn't subject to APA review. It was based on information received from other sources in the government, right? This was solely the CBP officer's conjecture. It wasn't other information given to them by the government. Our argument would be that if consular non-reviewability applied, that it would still need to be a facially legitimate and bona fide reason, and that the evidence and record shows that it was not, that there wasn't actually a material misrepresentation made. There is not support in the record of evidence that CBP generated for that finding. Even if consular non-reviewability were to apply, both this court in Morphin and the Supreme Court in Mandel stated that the government must at least meet a facially legitimate and bona fide standard. And in this case there was not... Well, okay, misrepresentation in those circumstances is facially legitimate, correct? I don't believe so, Your Honor. You could be wrong. Yes. Is that the difference you're trying to... Yes, Your Honor. In Dinh and in Nauf and in Mandel, there wasn't a question that the ground of inadmissibility cited had, that that person had that ground of inadmissibility. Those were challenges to the application of the ground to that person, not that they actually committed acts which could properly render them inadmissible. In this instance, our statement is that the ground isn't legitimate because there wasn't a material misrepresentation. In Dinh there was a conviction. There was a basis. It doesn't matter, though, does it? I believe that because... Is that Dinh? I believe it does, Your Honor, because the court can look at the limited evidence to see if the justification provided by the government is supported by the limited record evidence. And in this instance, we do not believe that it was. So there's a substantial evidence requirement for denials of visas? We don't state that there's a substantial evidence standard here, Your Honor. We simply state that there isn't. If consular nonreviewability applies, certainly review is broader under the APA if jurisdiction properly lies there. But if consular nonreviewability applies, we're simply stating that it isn't a bona fide and facially legitimate statement because there isn't any evidence that an actual material misrepresentation was made. The small amount of evidence relied on by the government, and in the record, does not support and render that a facially legitimate, abortified example. If the plaintiff, Matushkina, had not withdrawn her application in 2009, what would have happened? Your Honor, the customs officer would have likely then issued an expedited removal order. Which would not have been subject to any judicial review? That's correct, Judge. So why does she get judicial review by withdrawing her application? Your Honor, that's the statutory scheme that Congress has created with the INA and with the APA. Whether that was intentional or not. Well, maybe, maybe not. I mean, the general presumption in this field, as the D.C. Circuit explained in the Saavedra-Bruno case, is rather against a judicial review rather than the APA presumption in favor. Isn't it? I believe that there, certainly the D.C. Circuit stated such in Saavedra-Bruno, but I don't believe there is strong support in case law to extend this to a CBP action. And I think that APA still provides a grounds for review of this decision. Thank you. Thank you, counsel. Ms. Zack. Good morning, Your Honors. Adrienne Zack on behalf of Appellees. The District Court properly dismissed this case for lack of jurisdiction because neither Plaintiff Matushkina nor Plaintiff Sun had standing. Neither has suffered an invasion of a legally protected interest, which is required under Article III. When the Customs and Border Protection officer tentatively determined that Ms. Matushkina was not likely to be admissible and permitted her to then withdraw her application for admission. And even if one of the plaintiffs had standing, plaintiffs' claims fail because their claims are barred from review under the APA for lack of final agency action and for other reasons as explained in the Saavedra-Bruno case that Your Honor pointed out. Are they also barred by the statute of limitations? They are. And if so, how can you argue statute of limitations and lack of final agency action together? The statute of limitations argument, Your Honor, is an in the alternative argument. If the plaintiffs had standing, if there is judicial review under the APA, there is nonetheless a time problem here. This action was filed six and a half years and a little more after the inadmissibility interaction that occurred at the border here in Chicago. And so under the 28 U.S.C. 2401A, this case is too late, and that is clearly applicable to an APA claim. Is there an express statutory prohibition that applies here to judicial review, or are you relying on the broader, somewhat less structured doctrine of consular non-reviewability? There is no express statutory prohibition. So there's nothing in 1252 that we look at and say, that's it. Correct. And in part, that comes from the fact that there hasn't been anything officially decided to be final agency action that we've seen. Well, you have a denial of a visa, right? Correct. And the denial of the immigrant visa is not at issue in this case and also provides an avenue to distinguish this case somewhat from the consular non-reviewability doctrine in which review is permitted in a very limited fashion, recognized in Kerry v. Dinn and in this case by this court in Morphin. In those cases, the alien themselves did not have the right to seek review under the consular non-reviewability doctrine. It is someone in the United States that has standing to bring a claim almost on that individual's behalf. In both Morphin and Dinn, that was a citizen spouse in the United States. Here we have no relationship to have that constitutional hook that allows for review under the consular non-reviewability doctrine, even looking then to the immigrant visa. And especially in this particular action that's challenged here, this is a non-immigrant visa application. There was no requirement for any of the plaintiff's family to sponsor her to come to the United States on a non-immigrant visitor visa. The action was all taken on her own. So maybe you need to educate me a little bit on that. So you think the scope of consular non-reviewability is different depending on whether it's an immigrant visa or a non-immigrant visa? In the reviews that have occurred and been permitted by the Supreme Court, there has always been some person in the United States that had a constitutional right at issue to seek the other individual. So maybe it's not the difference between an immigrant visa or a non-immigrant visa, but the non-immigrant visa shows that there is no one in the United States with the constitutional hook here in this particular set of facts. What about Mandel? Mandel was a non-immigrant visa, right? The speaker on Marxist topics. Correct. And the plaintiffs in that case had the ability to bring that case because they were asserting their First Amendment rights. Right. And here, even looking to the non-immigrant visa, there's no constitutional right that Ms. Sun could assert that would allow for any review. Could the courts review a denial of Ms. Matushkina's application if she could allege and offer some evidence to the effect that it was based upon her religion or political views? I'm unsure of the answer to that question, Your Honor. Okay. The escape hatch for the facially legitimate bona fide reasons might come into play there. There was at least one other thing I wanted to ask you. Let's suppose, and this has come up in some other cases, let's suppose Ms. Matushkina somehow managed to enter the United States illegally and was put into removal proceedings. Would she be able to seek relief that would wind up putting this finding or determination at issue? Seeking some kind of adjustment of status, perhaps a petition filed by her daughter on her behalf? Right. There's a lot of variables in that question, Your Honor. I'm not saying it's a well-informed question, but we've seen situations in which basically people who manage to sneak into the country are able to raise some very interesting issues that otherwise they might not be able to. And without knowing exactly all of the circumstances, I'll cabin my response with just a tentative. In order to adjust while you are in the United States, you have to have had a prior lawful admission into the United States, so much of the answer to that question would depend on if she could adjust once in the United States. In removal proceedings, she potentially could raise claims such as asylum and things like that that aren't prefaced on that, but I'm unsure. Okay. Sorry. Thank you. So as the district court found, there is no standing here because there is no legally protected interest as is required for standing. And in the alternative, as we have argued in our briefs, that because the plaintiff withdrew her application for admission, that precluded the ability of the agency to take any action that could be reviewed under the APA. Well, if she had not withdrawn, the result would have been a non-reviewable decision, right? Also correct. So you don't get to the APA, do you? That's correct, Your Honor. And the APA also prevents review because of the other limitations language in 5 U.S.C. 7021, which is what Saavedra Bruno recognized, and that these other limitations include this principle that the issues of foreign affairs are not in the purview of the courts to review, which is where the doctrine of consular non-reviewability comes from, and this also would stem from that same conceptual nucleus. And even if the plaintiffs advance the argument that the discovery rule is applicable to the statute of limitations in this case, and as we further explain in our briefing, the discovery rule isn't applicable to a case that arises under 2401A rather than 2401B. The concerns that gave rise to the discovery rule are the ability to discover an injury, and here, such as fraud and medical malpractice cases where it's hard to know when you might have been injured in the past, and therefore it's not applicable to APA cases like here where the action challenge is direct agency action towards an individual that is easily discernible at the time that it happens. And if the court has no further questions, the appellees rest on our briefs and ask that you uphold the dismissal of this case by the district court. Thank you. Thank you. Thanks to both counsel. The case will be taken under advisement, and the court will be in recess.